IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 9, 2020 Session

**STATE OF TENNESSEE v. DEMARIUS JEROME PITTS**

**Appeal from the Circuit Court for Williamson County**
**No. IICR180442     Deanna B. Johnson, Judge**

————————————————————

**No. M2019-00866-CCA-R3-CD**

————————————————————

Defendant, Demarius Jerome Pitts, pleaded guilty to possession of a Schedule IV drug with intent to sell or deliver. After denying judicial diversion, the trial court sentenced Defendant to serve three years to be suspended to supervised probation. On appeal, Defendant contends that the trial court erred when it denied his request for judicial diversion. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and TIMOTHY L. EASTER, JJ., joined.

Vanessa Pettigrew Bryan, District Public Defender; and M. Todd Ridley, Assistant Public Defender (on appeal); and James John Croley, Assistant Public Defender (at trial), for the appellant, Demarius Jerome Pitts.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Kim R. Helper, District Attorney General; and Sean Bernard Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Procedural background***

On July 9, 2018, Defendant was indicted by the Williamson County Grand Jury for possession of Xanax, a Schedule IV drug, with intent to sell or deliver; possession of marijuana; driving with a suspended license; and failure to stop at a stop sign. On February 11, 2019, Defendant entered a guilty plea to possession of a Schedule IV drug

with intent to sell or deliver, a Class D felony, and the remaining charges were dismissed. As part of the negotiated plea agreement, the parties agreed that a hearing would be conducted "to decide the sole issue of whether the Defendant receives diversion pursuant to T.C.A. 40-35-313." The agreement recommended a three-year probated sentence if the trial court denied diversion.

At Defendant's plea hearing, the State gave the following factual basis for Defendant's guilty plea:

> On the date contained within the indictment, officers with the Franklin Police Department Flex Unit were patrolling the Galleria Mall located here in the Williamson County area. During their patrol, Your Honor, they did observe two vehicles come together. One of them being a vehicle driven by the Defendant. And upon making observation of the two vehicles they did observe an individual get out of their [sic] vehicle and enter into the passenger seat of the Defendant's vehicle, stay for a short period of time, and then enter back into the original vehicle. The Defendant's vehicle at that point then drove off.
>
> The officers recognized that this activity was consistent with illegal drug activity and therefore followed Defendant's vehicle. The Defendant's vehicle then failed to stop completely at a stop sign – a traffic violation for which the officers then pulled the Defendant's vehicle over.
>
> Upon running the Defendant's driver's license it was learned that the Defendant's license was suspended. Based on the positioning of the vehicle, being a traffic hazard, the vehicle was towed. An inventory pursuant to the towing of that vehicle did reveal a plastic bag of approximately 100 Xanax located in the center console area of the vehicle. A T.B.I. scientist would testify that those Xanax are indeed a Schedule IV controlled substance. Expert testimony would be that the possession of a hundred Xanax without a prescription is a quantity consistent with intent to sell or deliver.

On April 22, 2019, the trial court conducted a hearing to determine whether Defendant should be placed on judicial diversion. A presentence report was admitted into evidence. Defendant testified that he had recently moved back to live with his parents after he and his girlfriend separated. Defendant graduated from high school in 2011. He attended Tennessee State University from 2011 to 2013, and he attended Nashville State Community College from 2014 to 2016. Defendant testified that he

stopped attending college because of "transportation issues." Defendant testified that he had plans to return to college to study nursing.

Defendant testified that he began having seizures "toward the end of [the prior] year[,]" and he was taking medication for his seizures. Defendant testified that he was shot in the back of his neck during "an altercation [where an]other vehicle just opened fire on [his] car." Defendant testified that the bullet was still in his neck and he did not know whether that was the cause of his seizures.

At the time of his arrest, Defendant was employed full-time as a forklift operator. At the time of sentencing, Defendant had been unemployed for one year. Defendant testified that he had applied for jobs that did not require him to operate machinery, but he was "just trying to get [his] health together." He testified that he had outstanding student loan debt and that he had difficulty affording his seizure medication. He testified that he did not have health insurance.

Defendant acknowledged that he began using marijuana when he was 18 years old. Defendant was 26 years old at the time of the judicial diversion hearing. He testified that he used marijuana prior to entering his guilty plea in February 2019. Defendant testified that the 100 tablets of Xanax he was charged with being in possession of were given to him. He acknowledged that he intended to sell the Xanax. He testified that he was "pressured into doing it." He testified that he lived in an area where people deal drugs, and "they see [he's] down and needing help, so that's how they try to offer to help."

The State presented no witnesses at the hearing. At the beginning of the hearing, the State submitted the probation investigative report as an exhibit, and with no objection by defense counsel, the report was admitted as an exhibit. The assistant district attorney immediately announced, "[u]pon entering that exhibit, the State rest[s]."

Defendant was the only witness who testified, and the State cross-examined him. At the conclusion of the hearing, the State declined to present any argument and announced to the trial court, "State stands on testimony of the witness, Your Honor, and the presentence report."

Defense counsel presented a brief argument, but like the State, did not specifically argue what facts addressed any of the factors which a trial court is required to consider in making the determination of whether a defendant should be granted judicial diversion if the defendant is statutorily eligible for such relief.

The trial court's ruling, stated on the record, is relatively brief, comprising three pages of transcript. The trial court did make some findings of fact. The trial court found that Defendant was eligible to be considered for judicial diversion. Defendant admitted that his driver's license had been suspended in the past. Defendant had "sixteen prior arrest[s] or encounters with law enforcement[,]" and on one of them in 2016, "he had to pay a find and court cost[s]." Defendant used marijuana shortly before his guilty plea in the case *sub judice*. However, the trial court acknowledged Defendant had no prior criminal record.

The trial court stated it had concerns about Defendant's credibility by "not remembering, conveniently not remembering a lot of things that I feel like he should have remembered." The trial court found that Defendant had driven in the past while his license was suspended.

The trial court, in examining factors that must be considered, specifically made the following conclusions. As to amenability to correction, the trial court concluded "that may be where those sixteen prior run-ins with law enforcement would come into play." As to Defendant's social history, the trial court stated that not a lot of proof was presented, but that "[w]e've heard about him living with his family and that kind of thing."

As to physical and mental health, the trial court found that he began to suffer seizures six or seven months prior to the judicial diversion hearing, and he had been shot in the back of his neck three years prior to the hearing. The trial court stated it had to look at deterrence as to Defendant and others, but made no factual findings regarding deterrence and did not apply deterrence in favor of or against granting diversion.

As to Defendant's attitude and behavior since his arrest, the trial court considered Defendant's act of smoking marijuana shortly before his guilty plea. The trial court determined its findings of credibility problems with Defendant applicable to his emotional stability. The trial court found Defendant had a good work record.

As to marital stability, the trial court noted Defendant is single, but did not have very much family responsibility. Concerning Defendant's attitude about law enforcement and enforcement of laws, the trial court pointed out Defendant's use of marijuana while this case was pending and that he had driven prior to his arrest while his license had been suspended.

Without specifically weighing factors that favored judicial diversion or weighing factors that went against granting diversion the trial court concluded by stating its ruling as follows:

- 4 -

The 40-35-313 [s]tatute is supposed to be a rare, sort of a gift, and apply in very limited situations. This is not that kind of limited situation in my opinion. So, respectfully, the request for judicial diversion is denied.

Pursuant to the recommendation in the plea agreement, the trial court sentenced Defendant to three years in the Tennessee Department of Correction as a standard offender. The sentence was suspended to supervised probation.

*Analysis*

On appeal, Defendant contends that the trial court abused its discretion when it denied his request for judicial diversion. He contends that the trial court failed to properly consider and weigh the applicable factors, and the court's ruling was "nothing more than a cursory and perfunctory recitation of the *Parker* and *Electroplating* factors." Defendant also contends that the trial court erred by considering prior charges that were dismissed in determining that Defendant lacked amenability to correction.

The trial court found, and the parties agree, that Defendant is qualified for judicial diversion under the requirements of Tennessee Code Annotated section 40-35-313(a)(1)(B) (2019). However, "a 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Following a determination that the defendant is eligible for judicial diversion, the trial court must consider:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice - the interests of the public as well as the accused.

*State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) ); *see also King*, 432 S.W.3d at 326 (reaffirming that the *Electroplating* requirements "are essential considerations for judicial diversion").

The trial court must weigh the factors against each other and explain its ruling on the record. *King*, 432 S.W.3d at 326 (citing *Electroplating*, 990 S.W.2d at 229). If the trial court adhered to these requirements, "the determination should be given a

presumption of reasonableness on appeal and reviewed for an abuse of discretion." *Id*. at 319. This court will "not revisit the issue if the record contain[ed] any substantial evidence supporting the trial court's decision." *Electroplating*, 990 S.W.2d at 229; *see also Parker*, 932 S.W.2d at 958.

A trial court is "not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness." *King*, 432 S.W.3d at 327. However, "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." *Id*. If the trial court "fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." *Id*. "In those instances, the appellate courts may either conduct a de novo review or . . . remand the issue for reconsideration." *Id*. at 328.

Defendant contends that the trial court did not adequately weigh the required factors. While the trial court did make findings of fact and identified facts that applied to the factors, there is no explicit weighing of the factors by the trial court. Accordingly, we agree with Defendant. However, even though the trial court failed to explicitly weigh the factors, the findings of fact made by the trial court and its application of those facts to certain factors allows this court to conduct a de novo review.

In the preparation of the presentence report, Defendant admitted that he had used marijuana since the age of 18 and had used it "a few days prior to his [February 11, 2019] court appearance." Defendant had no prior convictions. He had been charged with driving with a revoked or suspended license nine times prior to the current offense. The presentence report also shows that Defendant had previously been charged with drug paraphernalia, possession of drugs, and theft. However, the State offered no evidence to show any violation of the law by Defendant involving these charges, even by a preponderance of the evidence. Thus, the trial court erred by relying on the prior charged offenses to deny judicial diversion. The trial court considered Defendant's employment history and determined that he had a "good work record."

In our de novo review, we conclude that Defendant's lack of credibility, as found by the trial court, weighs heavily against Defendant's amenability to correction, as does his use of marijuana while this felony drug charge was pending. As to Defendant's prior criminal conduct (without convictions there is not a criminal record), the appropriate facts found by the trial court was Defendant's driving while his license was suspended and his use of marijuana. Defendant's physical and mental health is slightly in favor of granting judicial diversion, with his suffering from seizures. The State offered no evidence and made no argument of a need to deny judicial diversion based upon

deterrence to Defendant or the public. This weighs in favor of granting judicial diversion, but should have only slight weight due to the circumstances of the offense. Defendant was found in possession of a significant number of pills of a controlled substance, just minutes after being observed in a situation that appeared to be a drug sale. Defendant's social history weighs neither in favor of nor against granting judicial diversion. The trial court found that Defendant had a good work record. This weighs somewhat in favor of his social history as well as the factor that judicial diversion could serve the ends of justice as to the interests of the public as well as Defendant. Defendant testified that his seizures prevented him from performing some of his prior jobs, but he also testified that he chose not to work while the charges in this case were pending. In other words, Defendant's good work record diminished during the approximately seven months the charges were pending.

Judicial diversion, if granted and successfully completed, allows for dismissal of all the charges, setting aside the guilty plea, and expungement of the records of the offenses. If granted judicial diversion, a defendant can be restored to having no criminal record. Lawful conduct during the period of probation is a requirement, with virtually no exceptions. Hence, a defendant's amenability to correction is the cornerstone as to a successful completion of judicial diversion. We conclude upon de novo review that Defendant's strong lack of amenability to correction, as found in the findings of fact, substantially outweighs all factors which marginally weigh in favor of granting judicial diversion. Accordingly, judicial diversion must be denied.

Lastly, Defendant asserts that the trial court's statement that a grant of judicial diversion is a "rare gift" indicates that the trial court applied an incorrect legal standard and was a blanket denial of diversion. We disagree. While the trial court made a poor choice of words that are inapplicable to consideration of judicial diversion (the General Assembly has never explicitly or implicitly determined that judicial diversion is a "gift"), since we choose to make a de novo review, this comment is harmless. Defendant relies on *State v. Teresa Turner*, M2013-00827-CCA-R3-CD, 2014 WL 310388, at *6 (Tenn. Crim. App. Jan. 29, 2014), *no perm. app. filed*. However, that case is distinguishable. In that case, a panel of this court reversed the denial of judicial diversion because the trial court's ruling suggested a categorical exclusion of diversion when a death was involved. The panel stated, "[i]n our view, the trial court's denial of judicial diversion based solely upon the death of the victim is an abuse of discretion." In this case, the trial court did not categorically deny diversion based solely on one improper factor.

Upon de novo review, we conclude that the record supports the trial court's denial of judicial diversion. Defendant is not entitled to relief.

CONCLUSION

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgment.

_____
THOMAS T. WOODALL, JUDGE